Charles A. Loreto, J.
The parties to this separation suit were married in New York on April 17,1939. There are no children of the marriage. In April, 1958 the defendant left his home and wife without justifiable cause and since then has been cohabiting with another woman with whom he has entered into a questionable marriage. He has not contested the plaintiff’s right to a separation.
The dispute in this case is as to the amount to be awarded as permanent alimony. The attorneys for the parties suggest widely divergent amounts for such an award.
The following are pertinent facts that the court finds established by the evidence. When they married he was a clerk employed by a leading banking and investment house at the weekly salary of $50. She was a dress saleslady and worked during their first year of marriage. With the passing of time he advanced in the investment division of his firm. She testified, and was not contradicted, that at times when he was discouraged and thought of leaving for other employment or business associations, she encouraged him to remain with his employers with faith that he would progress further. As a devoted wife, she employed her domestic talents when occasion permitted to entertaining prominent customers and members of the firm. She remained a dutiful and faithful wife during the 19 years that they lived together as husband and wife. During the years 1956 and 1957, she was under psychiatric care. In 1956 the sum of $5,750 was expended for her medical care. She is now 59 years of age and he 45 years of age.
On January 1,1958, he was admitted as a junior partner of the firm — a crowning business success for him and bitter gall for her, as within a few months thereafter (April 7, 1958) he abandoned her.
The defendant’s attorneys state that the Appellate Division opinion on a prior appeal in this case (10 A D 2d 291) virtually dictates that the alimony award must be established at a figure *778 commensurate with the preseparation standard of living. The court is not convinced that the facts found after trial in this case require that to he the sole and determinative factor in fixing permanent alimony. Where a person marries another of great wealth and a high standard of living is maintained before separation, that would be a clear case to hold that to be the applicable principle. Also, it may be said generally a wife is not entitled to share in her husband’s income or assets when the preseparation standard of living was reasonable and adequate under all the circumstances (Borchard v. Borchard, 5 A D 2d 472, 477; Hearst v. Hearst, 3 A D 2d 706, affd. 3 N Y 2d 967). However, this general principle has its limitations and qualifications. The Appellate Division in this case readily interposed the following caveat regarding its application: “ There undoubtedly are instances, especially, but not exclusively, in marriages of long standing, where the wife is entitled to share in a progressive increase in the standard of living which is frustrated only because of the wrongful separation.” Citing what it considers a classic example, the opinion continues: “In such case, the husband’s past and present income and assets — and perhaps his prospective income — may be appropriate matters for exploration.” (p. 295).
The court deems it appropriate in this case to consider the income and assets of the parties. The court finds that the defendant’s figures show their total living and personal expenses increased annually from $17,489 in 1953, to $21,166 in 1957, and in 1956 because medical expenses of $5,750 were incurred for the wife, the total was $25,171. As he had possession of checks and records, she could only give an estimate of current needs based upon their recent past scale of living and for such an estimate she gave the figure of $28,000. Up to the time of the separation there was a progressive rise in the standard of living, not fully developed and realized partially because of their apparent plan of building up growth investments. And because of his determination to apply himself unremittingly to his work and her illness, travel and trips abroad except for two were not taken.
Also, it appears that there was a marked and progressive increase in his income. For 1953 it was $28,605; in 1954, $40,479; in 1955, $54,596, plus capital gains of $42,251; in 1956, $64,435, plus capital gains of $32,353; in 1957, $56,167, plus capital gains of $25,307; in 1958, $28,905, plus capital gains of $16,547 and long-term gains of $38,543; and in 1959, $83,904; and in 1960, $111,481. (The figures for 1959 and 1960 include *779 ordinary income from partnership, long and short-term capital gains, and dividends.)
In addition to income, he valued his interest in the firm between $40,000 and $80,000 for the year 1959, and his securities at $120,000. He possesses real estate holdings with an equity of approximately $35,000.
As for her assets and possessions, the court finds that she occupies the rented apartment they shared, which has furnishings that cost $10,000. There is a country home in Connecticut owned by them by the entirety, for which $15,000 was paid in 1959 and which has been improved at an additional cost of $21,000. She also owns securities presently worth approximately $60,000.
Since the time that he left her in April, 1958 he has sent her the sum of $600 per month. She did not protest nor apply for temporary alimony, understandably not wishing to destroy any faint hope of winning him back. This amount certainly cannot be considered as a gauge in establishing permanent alimony. It should be noted that since 1959 she expended an additional considerable sum from her personal assets for her maintenance.
The court is satisfied that this is not a case where the husband’s capital assets should be a factor to consider, since she, too, has some capital assets and these holdings of each represent growth from savings and investments through the years. Nor is the court satisfied that this is a case where his potential and prospective income increase after the trial should be considered. These two factors undoubtedly would be proper to consider with other pertinent facts if there had existed a direct participation, financially or otherwise, by her in her husband’s business or profession. Here during a marriage of long duration she contributed less tangibly and in a different manner to his progress in his employment and business. Undoubtedly, his business success is directly attributable to his talent and industry in that field of endeavor. In other words, this does not strike the court as the clear-cut type where a husband’s assets and prospective income should be considered in fixing permanent alimony; nor is it the clear-cut type of case where the court should be confined to considering only the preseparation standard of living for that purpose. No court has held that in all instances the criteria must be either one or the other of the foregoing (see Phillips v. Phillips, 1 A D 2d 393, 398). The line of demarcation is not so absolute and final. Here the facts present a somewhat intermediate situation found in her devotion in marriage of long duration, absence of fault, the progressive rise in expenditures of their standard of living up to the time of abandonment — *780 which in all probability would have been greater but for the reasons already stated. And perhaps rare but surely important is the fact that he secured a significant partnership in his employer’s firm just prior to the time of abandonment.
Although at common law the deserted wife had no recourse for more than necessaries (Turner v. Woolworth, 221 N. Y. 425, 429), by statute she has been conferred a broader right. By section 1164 of the Civil Practice Act, the court is empowered to make an award ‘1 for * * * support * * * as justice requires, having regard to the circumstances of the respective parties.” (Emphasis supplied.)
In determining what is just, the meaning and significance of the marriage cannot be ignored. It has taken centuries for womanhood to be elevated from her state of subjection and to dignify the marriage. And in our society there is no gainsaying that marriage is not a mere commercial contract. It is an exalted status — the very foundation and basis upon which the structure of our civilization rests. Moreover, by many of our people, it is considered to be a sacrament, a holy union. Unfortunately, some marriages do not last “ until death do us part ” whatever the reason.
If marriage were to be treated merely as a contract, the award for support could be made as the result of cold calculation and determination of standard of living or of means and needs. A mathematical formula might then provide the answer for the decree. However, what is shattered and severed by the separation is one of the most precious and important human relationships. The conscience of the Chancellor must of necessity enter to do justice. It must take into consideration all the pertinent facts of the marriage, such as, its duration, fault, the health, age and earning power of the parties, their contributions and abstentions during marriage, their scale of living and current means and income. Its determination of the amount of the award as permanent alimony should not be punitive nor unduly burdensome on the party at fault, but should be one infused with compassion for both parties.
Upon these facts and reflections and taking into consideration the income tax incidence — that he will be permitted to deduct for tax purposes the entire amount of the award and that she will be required to pay a tax thereon as a femme sole — the court awards the sum of $20,000 per year as permanent alimony, to be paid in equal monthly installments to be computed from the commencement of the trial.